UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

DOYLE MIMS,

          Plaintiff,          Case No. 2:20-cv-23

v.                                      Honorable Janet T. Neff

ERICA HUSS et al.,

          Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. The Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), further requires the Court to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, without prejudice, Plaintiff's claims against Defendants Huss, Sebaly, Neubecker, Davis, Johnson, Scott, Negrinelli, Carlson, and Taskila because they are misjoined. The Court will also dismiss, with prejudice, Plaintiff's complaint against Defendant Mohrman, and Plaintiff's Fourteenth

Amendment claims and Eight Amendment for verbal harassment and deprivation of food claims against Defendant Haralson, for failure to state a claim.

**Discussion**

I.  **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MBP employees Correctional Officers Unknown Haralson, Unknown Davis, and Unknown Johnson; Lieutenants Unknown Sebaly and Unknown Neubecker; Registered Nurses C. Negrinelli and D. Carlson; Health Unit Manager Charlie Scott; Assistant Deputy Warden Unknown Taskila; and Warden Erica Huss. Plaintiff also sues MDOC Hearing Officer Thomas O. Mohrman. Plaintiff alleges a series of discrete events from May 6, 2019, to January 31, 2020, which involve the 11 Defendants to varying degrees.

Plaintiff is imprisoned after being convicted of a 2014 murder. Plaintiff alleges Defendant Haralson has given him trouble since shortly after Plaintiff arrived at MBP on April 22, 2019. Plaintiff alleges that Haralson "dropped [Plaintiff] back a stage" from stage four,[1] on several occasions "for fabricated reason[s]." (Compl., ECF No. 1, PageID.19.) Haralson allegedly fabricated Plaintiff's conduct in a sexual misconduct ticket and told Plaintiff that the ticket was "because [Plaintiff] wrote grievances in the past" against Haralson. (*Id.*)

Plaintiff further alleges that Haralson made disparaging and offensive remarks about Plaintiff's religion and race. Plaintiff asserts that Haralson called Plaintiff "a fake Muslim,"

---

[1] Presumably, Plaintiff references the Incentives in Segregation Program (IISP). *See* MDOC Policy Directive 04.05.120 ¶¶ QQQ to SSS, https://www.michigan.gov/documents/corrections/04_05_120_656619_7.pdf. The IISP is a six-stage progressive program for prisoners in administrative segregation. Prisoners who complete the program successfully can be considered for reclassification.

2

a "monkey in a cage," and that Haralson told him that "[b]lack people aren't real Muslims." (*Id.*, PageID.19, 21.) Plaintiff alleges that Haralson made additional offensive remarks after learning that Plaintiff had filed grievances against him.

On September 1, 2019, Haralson issued Plaintiff a ticket for sexual misconduct. Plaintiff alleges that the charge was false, and that Haralson stated that he had issued the ticket "because [Plaintiff] wrote grievances in the past." (*Id.*) At Plaintiff's hearing on the misconduct charge, he alleges that his hearing officer, Defendant Mohrman, did not believe Plaintiff engaged in the conduct yet stated, "but you shouldn't be writing grievances on c/o Haralson and he wouldn't have lied [about] you. I will always take the c/o['s] side. I wouldn't like [any]body writing grievances on me hopefully you'll stop now." (*Id.*, PageID.20.) When Plaintiff asked if Mohrman had found him guilty so that Plaintiff would stop filing grievances, Mohrman replied, "yup" and issued Plaintiff 21-days' loss of privileges. (*Id.*)

According to Plaintiff, Haralson's attacks were not merely verbal. On November 7, 2019, Haralson threw a roll of toilet paper at Plaintiff. As the roll came at Plaintiff, he was apparently unaware of what Haralson threw and dodged the toilet paper out of concern.

A few days later, on November 10, 2019, Plaintiff alleges that Haralson withheld his meal, stating that "Muslims don't eat pork." (*Id.*, PageID.22.)

On another occasion, while returning Plaintiff to his cell after a meeting with Defendant Huss on January 2, 2020, Haralson allegedly extended his leg and then pulled on Plaintiff's restraints causing him to trip on the stairs. Plaintiff experienced pain to his elbow and knee. Plaintiff further alleges that he threatened to file a grievance, and Haralson responded, "do it and [I']ll ticket you again." (*Id.*, PageID.25.) When Plaintiff's knee was examined several weeks later, Nurse Lynch (not a defendant) determined that the Plaintiff had torn ligaments.

After Plaintiff filed a grievance against Haralson for tripping him, Haralson came to his cell to bring him out to the yard. Plaintiff alleges that Haralson said, "I heard about the new grievances you wrote on me." (Compl., ECF No. 1, PageID.26.) Haralson stood at Plaintiff's door for several minutes and allegedly threatened to fabricate a misconduct charge and take Plaintiff's yard time away if Plaintiff did not sign off on the grievance.

Plaintiff further alleges that on January 23, 2020, when Plaintiff returned from court, he found that someone had ripped pages from his Holy Qu'Ran, left boot prints on his prayer rug, and placed three family photos in the toilet. Another inmate informed Plaintiff that Haralson had been in Plaintiff's cell.

Much of the conduct described in the remainder of the complaint stems from Plaintiff's interactions with Haralson. Plaintiff alleges that other Defendants protected Haralson or refused to protect Plaintiff. Plaintiff also alleges that several Defendants failed to provide adequate medical care in a timely fashion after Haralson injured him.

Plaintiff seeks damages of at least $560,000, as well as declaratory and injunctive relief.

## II. Misjoinder

Plaintiff has joined 11 Defendants in this action connecting a series of discrete events during the span from early May 2019 to late January 2020.

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will

arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice & Procedure Civil* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, [sic] and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004) (discussing purpose of PLRA). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based

on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is

7

appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

The Court therefore will look to Plaintiff's first set of factual allegations in determining which portion of the action should be considered related. Defendant Haralson's conduct is the first conduct listed in the complaint. (Compl., ECF No. 1, PageID.18.) Indeed, Haralson's conduct is referenced throughout the complaint. The first allegation involving Haralson and another Defendant involves Defendant Mohrman. (*Id.*, PageID.19.) Plaintiff's allegations connect no other Defendant to the first transaction or occurrence involving Plaintiff and Defendants Haralson and Mohrman. As a result, none of the other nine Defendants is transactionally related to Plaintiff's first claim involving Defendant Haralson and Mohrman. Moreover, it is clear that no question of law or fact is common to all Defendants. *See* Fed. R. Civ. P. 20(a)(2)(B).

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich.

8

Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

All of Plaintiff's actions against the remaining nine Defendants occurred since early September 2019, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed.

Accordingly, the Court will exercise its discretion under Rule 21 and dismiss Defendants Huss, Sebaly, Neubecker, Davis, Johnson, Scott, Negrinelli, Carlson, and Taskila from the action, without prejudice to the institution of new, separate lawsuits by Plaintiff against those Defendants. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

## III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**IV.   Immunity**

Defendant Mohrman is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for

rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, the Court will dismiss the complaint against Defendant Mohrman.

## V.     Retaliation

Plaintiff has alleged that in response to his filing of grievances, Defendant Haralson violated the First Amendment because he issued Plaintiff tickets for misconduct, found Plaintiff guilty of misconduct, made offensive comments toward Plaintiff, and shook down Plaintiff's cell damaging Plaintiff's property.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review, Plaintiff has sufficiently alleged retaliation in violation of the First Amendment against Defendant Haralson.

VI.     **Eighth Amendment**

Plaintiff alleges that Haralson tripped Plaintiff causing injury, that Haralson refused to serve him a meal, and that Haralson used offensive and disparaging remarks.

   A.     **Excessive Force**

Plaintiff's alleges that Haralson used excessive force when tripping Plaintiff and causing injury. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Upon initial review, Plaintiff has sufficiently alleged an excessive force claim against Haralson.

   B.     **Deprivation of Food**

Plaintiff alleges that Haralson refused to serve him a meal, arguably depriving Plaintiff of food in violation of the Eighth Amendment. "[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment

12

within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507-08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01-17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566.

Plaintiff alleges that Haralson denied him only one meal. He does not allege facts showing that his health suffered as a result of the deprivation or that the meals he did receive were inadequate to sustain his health. Under the recited authorities, the alleged deprivation does not

13

rise to the level of an Eighth Amendment claim. Consequently, Plaintiff fails to state a claim based on Haralson's action to deprive Plaintiff of one meal.

C. **Verbal Harassment**

Plaintiff's allegations that Haralson used offensive and disparaging remarks arguably asserts a claim under the Eighth Amendment. However, the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d at 954-55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). Accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendant Haralson arising from his alleged verbal abuse.

Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955.

Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not demonstrate a harm of constitutional magnitude. *See Torres v. Oakland Cty.*, 758 F.2d 147, 152 (6th Cir. 1985). Thus, Plaintiff fails to allege a claim of verbal harassment in violation of the Eight Amendment.

## VII. Fourteenth Amendment

Plaintiff has alleged that his Qu'ran and family photos were damaged and that "fabricated" misconduct charges were upheld against him.

### A. Deprivation of Property without Due Process

Plaintiff arguably alleges that the damage to his Qu'ran and photos deprived him of his property without due process. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

15

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, the Court will dismiss Plaintiff's deprivation of property claim.

### B. Misconduct Charge

Plaintiff further asserts that his due process rights were violated when, allegedly, Haralson fabricated misconduct charges against him for which Plaintiff was later convicted. Presumably, Plaintiff was convicted of a "major" misconduct. *See* Mich. Comp. Laws §§ 791.251-.252; MDOC Policy Directive 03.03.105 (effective July 1, 2018).

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or

16

property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply

17

a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff notes that he lost privileges for 21 days. In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). Plaintiff lost privileges for 21 days—a deprivation of far less significance and duration than the plaintiff's placement in segregation in *Sandin* and *Joseph*. If confinement in segregation for that time does not implicate a protected liberty interest, it follows that the less restrictive loss of privileges does not implicate such an interest.

Consequently, Plaintiff's loss of privileges did not trigger a right to due process. Thus, for all the foregoing reasons, Plaintiff does not state a due process claim.

## VIII.  Pending Motion

Also pending before the Court is Plaintiff's motion for leave to file "evidence/exhibits." (ECF No. 3.) In the motion, Plaintiff requests that the Court consider declarations he has filed in *Mims v. Huss et al.*, No. 2:19-cv-106 (W.D. Mich.). The Court has determined the proposed evidence is not necessary for screening the complaint. Moreover, under local rules, "[f]ilers must *not* attach as an exhibit any pleading or other paper already on file with the court, but shall refer to that document by the ECF No. identified thereon." W.D. Mich. LCivR 5.7(vii)(B). Plaintiff has suggested that his proposed exhibits are on file with the Court. Records in Plaintiff's earlier case remain accessible to the Court. Plaintiff may, as necessary, refer to those

documents by case and ECF numbers. Thus, at this juncture, the Court will deny the motion without prejudice.

**Conclusion**

Having conducted the review under Federal Rule of Civil Procedure 21, the Court determines that Defendants Huss, Sebaly, Neubecker, Davis, Johnson, Scott, Negrinelli, Carlson, and Taskila will be dropped from the case. Plaintiff's claims against them will be dismissed without prejudice.

Plaintiff's claims against Defendant Mohrman, his Fourteenth Amendment claims against Defendants Haralson, and his Eighth Amendment claims for verbal harassment and deprivation of food against Defendant Haralson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claim, and Eighth Amendment excessive force claim against Defendant Haralson remain in the case.

The Court will also deny Plaintiff's pending motion (ECF No. 3) without prejudice.

An order consistent with this opinion will be entered.


Dated: April 1, 2020                    /s/ Janet T. Neff
                                        Janet T. Neff
                                        United States District Judge